UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM H. LEWIS III and KEITH BRODIE, on Behalf of Themselves and All Others Similarly Situated, | § § § § | CIVIL ACTION NO. H-02-4860 |
| Plaintiffs, | § § | |
| v. | § § | |
| EL PASO CORPORATION, et al., | § § § | |
| Defendants. | § | |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................................... ii

I.      Introduction ........................................................................................................1

II.     Plaintiffs' Liability Case ....................................................................................1

III.    Litigation of the Case ........................................................................................2

IV.     Summary of the Settlement Agreement .............................................................3

V.      Notice and Objections .......................................................................................3

VI.     Final Approval ...................................................................................................5

        A.      Presumption of Fairness ..........................................................................5

        B.      Standard ...................................................................................................6

        C.      Analysis of Factors .................................................................................7

                1.      The proposed settlement is free from fraud and collusion ...........7

                2.      Complexity, expense, and likely duration of continued litigation ............8

                3.      The stage of the proceedings and the amount of discovery
                        completed ......................................................................................9

                4.      Probability of success on the merits ...........................................11

                5.      The range of possible recovery ...................................................12

                6.      The opinions of counsel, named plaintiffs and the class .............14

VII.    Class Certification ............................................................................................16

VIII.   Plan of Allocation ...........................................................................................16

IX.     Conclusion .......................................................................................................18

CERTIFICATE OF SERVICE .........................................................................................19

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**FEDERAL CASES**

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002) ..............................................................................12

*Ayers v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) ...............................................................................6

*Brieger v. Tellabs, Inc.*,
    473 F. Supp. 2d 878 (N.D. Ill. 2007) ...................................................................15

*Carson v. American Brands, Inc.*,
    450 U.S. 79 (1981)................................................................................................5

*In re Chicken, Antitrust Litig.*,
    669 F.2d 228 (5th Cir. 1982) .........................................................................12, 16

*Clark v. Lomas & Nettleton Fin. Corp.*,
    79 F.R.D. 641 (N.D. Tex. 1978) ...........................................................................8

*In Re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) .............................................................7, 9, 10, 12

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977)............................................................................5, 6

*DiFelice v. U.S. Airways, Inc.*,
    436 F. Supp. 2d 756 (E.D. Va. 2006), *affirmed*, 497 F.3d 410 (4th Cir. 2007)......................11

*Donovan v. Bierwirth*,
    754 F.2d 1049 (2d Cir. 1985)..............................................................................13

*Eaves v. Penn*,
    587 F.2d 453 (10th Cir. 1978) ............................................................................13

*Edgar v. Avaya, Inc.*,
    503 F.3d 340 (3d Cir. 2007)................................................................................13

*In re Enron Sec., Derivative and ERISA Litig.*,
    228 F.R.D. 541 (S.D. Tex. 2005).........................................................................12

*Florida Trailer & Equipment Co. v. Deal*,
    284 F.2d 567 (5th Cir. 1960) ................................................................................6

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................8, 9

*In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.,*
   MDL No. 1500, 2005 U.S. Dist. LEXIS 3715 (S.D.N.Y. Mar. 9, 2005) ...............................15

*In re JDS Uniphase Corp. ERISA Litig.,*
   No. 03-CV-4743, 2005 WL 1662131 (N.D. Cal. July 14, 2005).............................................15

*Kirschbaum v. Reliant Energy, Inc.,*
   526 F.2d 243 (5th Cir. 2008) .................................................................................................11

*Landgraff v. Columbia Healthcare Corp.*
   No. 98-CV-0090, 2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000).......................11

*In re Luxottica Group S.p.A. Sec. Litig.,*
   233 F.R.D. 306 (E.D.N.Y. 2006) ...........................................................................................12

*Miller v. Republic Nat'l Life Ins. Co.,*
   559 F.2d 426 (5th Cir. 1977) ...................................................................................................5

*Nelson v. IPALCO Enters., Inc..*
   480 F. Supp. 2d 1061 (S.D. Ind. 2007)...................................................................................11

*Newby v. Enron,*
   394 F.3d 296 (5th Cir. 2004) ..................................................................................................10

*Pettway v. American Cast Iron Pipe Co.,*
   576 F.2d 1157 (5th Cir. 1978) ..................................................................................................6

*In re Polaroid ERISA Litig.,*
   362 F. Supp. 2d 461 (S.D.N.Y. 2005)......................................................................................15

*Purdie v. Ace Cash Express, Inc.,*
   No. 01-CV-1754, 2003 U.S. Dist. LEXIS 22547 (N.D. Tex. Dec. 11, 2003) ......................5, 7

*Reed v. General Motors Corp.,*
   703 F.2d 170 (5th Cir. 1985) .................................................................................................5, 6

*Schwartz v. EL PASO Corp.,*
   No. 02-CV-2243, 2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005)..........................14

*Taft v. Ackermans,*
   No. 02 –CV-7951, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007)...........................17

*Turner v. Murphy Oil USA, Inc.,*
   472 F. Supp. 2d 830 (E.D. La. 2007)......................................................................................14

*United States v. Texas Educ. Agency,*
   679 F.2d 1104 (5th Cir. 1982) ..................................................................................................5

*Williams v. First Nat'l Bank,*
    216 U.S. 582 (1910) ...........................................................................................5

**RULES**

FED. R. CIV. P. 23(a) and (b)(1) ......................................................................16

**OTHER AUTHORITIES**

Employee Retirement Income Security Act of 1974 .......................................1

Plaintiffs William H. Lewis III and Keith Brodie ask the Court to approve a class action settlement with all defendants and approve the proposed plan of allocation.

## I.      Introduction

This settlement is a very good recovery for the class.  Defendants will pay $17 million to the El Paso Energy Corporation Retirement Savings Plan (the "plan") and make changes to plan management that benefit all participants.  The terms were negotiated at arm's-length for over two and a half years and with the assistance of two well-qualified, experienced mediators.

Nineteen thousand notices were mailed to class members and, in response, only two non-specific objections were filed.   In light of the circumstances of the litigation and lack of meritorious objections, lead plaintiffs and their counsel request that the settlement be approved.

## II.      Plaintiffs' Liability Case

Plaintiff plan participants Lewis and Brodie allege that El Paso Corp. and the other defendants failed to comply with their fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA) when plan participants were offered El Paso stock as an investment option during the class period.  Lewis and Brodie brought their case on behalf of a class of plan participants and on behalf of the plan under ERISA §§ 409 and 502.  The complaint alleges that El Paso and the other defendants should not have permitted investment in El Paso stock during the class period because the stock was an imprudent investment under ERISA's standards due to:

1.      the improper manipulation by El Paso of the California energy market by withholding natural-gas pipeline capacity which inflated energy prices,

2.      the improper manipulation of national energy market prices by the reporting of incorrect trading information,

3.      the improper inflation of El Paso's gross revenues through the use of round-trip trading schemes, and

4.    the improper overstatement of El Paso's oil and gas reserve estimates, which required a write-down of at least $1 billion.

These factors resulted in, among other things, payment by El Paso of significant regulatory fines and the successful criminal prosecution of El Paso employees.

## III.    Litigation of the Case

The complaint, filed in 2002, seeks relief for a number of violations of ERISA stemming from the plan's investment in El Paso stock. El Paso and the other defendants moved to dismiss and/or for summary judgment three times. Lewis and Brodie opposed. The court heard oral argument but never ruled on the merits of the motions.

There was a discovery stay. However, information was informally exchanged. Plaintiffs' counsel reviewed over two million pages of documents produced by El Paso; in addition, counsel conducted research of the liability issues.

The parties first mediated their dispute in June 2006 with Houston attorney Gary McGowan. A second mediation was set for June 2007 but was canceled by Mr. McGowan, who deemed a resolution at that time unlikely. Mr. McGowan continued independent negotiations with the parties and, in August 2007, persuaded plaintiffs to send a new demand. Resolution was still not forthcoming.

In the fall 2007, El Paso requested that a different mediator – the Honorable Herbert Stettin of Miami – be retained. The parties attended a second mediation with the new mediator in January 2008 but again could not agree. They continued negotiations and, in summer 2008, reengaged Mr. McGowan to help finalize an agreement. After finally reaching an agreement in principle in fall 2008, the parties continued to negotiate the terms of the settlement agreement through early 2009.

IV.     **Summary of the Settlement Agreement**

The Settlement Agreement provides that El Paso and the other defendants will pay $17 million to the class. El Paso will also implement or maintain the following provisions to the plan through at least December 31, 2009:

1.      No participant will be required to invest in El Paso stock.

2.      El Paso's matching contributions will not be required to be made in El Paso stock.

3.      El Paso will continue its participant education program and automatic enrollment for new participants.

4.      El Paso will provide all participants with annual training on investment alternatives and will provide web-based tools.

5.      El Paso will bear the expense of providing investment management advice and tools to participants.

6.      El Paso will retain a professional investment advisor to review the investment options in the plan.

The settlement proceeds will be allocated pro rata to class members under the plan of allocation. The court preliminarily approved the settlement, certified the class, allowed the mailing of notice, and set a final hearing in its order of February 3, 2009.

V.      **Notice and Objections**

Notice was sent to 18,166 potential class members on February 23, 2009. *See* Affidavit of Jose C. Fraga Regarding the Dissemination of the Settlement Proposal: El Paso's Retirement Savings Plan ("Fraga affidavit") at ¶ 3, attached as exhibit 3 to the contemporaneously filed Motion and Memorandum in Support of Application for Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Awards (the "fee motion"), which is incorporated by reference.[1] Additional notices were mailed at the request of class members or as a result of

---

[1] An additional 221 notices were sent to potential class members on February 20, 2009. Fraga affidavit at ¶ 4.

updated addresses. *Id.* at ¶¶ 6-7. In total, 19,232 notices were mailed to potential class members. *Id.* at ¶ 8.

In addition, a toll-free interactive voice response (IVR) system was activated on February 23, 2009, to provide information regarding the settlement to potential class members. *Id.* at ¶ 5. Finally, the website www.elpasoERISAsettlement.com was established beginning February 23, 2009, to provide additional information to class members. *Id.* at ¶ 9. The website contains the Notice of Settlement Proposal, the Settlement Agreement, the Proposed Plan of Allocation, the Preliminary Approval Order, the Amended Complaint, and a list of frequently asked questions and answers.

The notice distributed to class members provided a description of the settlement, the class, the litigation, how to object to the settlement, and the date, time and location of the final fairness hearing. The notice also provided the settlement website address, where additional information was available.

Only two "objections" were received. Harry Carty sent a single sentence: "This letter is being written as an objection to [sic] lawsuit with the El Paso Energy Corporation Savings Plan." Objection of Harry Carty, filed April 7, 2009. If this is an attempt to object to the provisions of the settlement, it does not state which portions (if any) are being objected to or the bases for those objections (if any). The Carty objection, therefore, is without merit.

Meredith Knepp, Jr. also sent a letter to the court, advising that he is "against any lawsuit wherein someone wants something for nothing." Letter of Meredith Knepp, Jr., filed April 4, 2009. Assuming this is intended as an objection to the settlement (nowhere in the letter does it state that he objects to the settlement), it is also without merit. The letter seems to indicate a

general dislike of litigation and does not object to any particular portion of the settlement or of this case.

## VI.     Final Approval

### A.     Presumption of Fairness

Courts have long observed a general policy favoring the settlement of disputed claims. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). The Fifth Circuit has consistently held that settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (internal citation omitted). Particularly when reviewing settlements of class actions, this circuit has held that "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Purdie v. Ace Cash Express, Inc.*, No. 01-CV-1754, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003). As a result, the Supreme Court has cautioned that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Further, where experienced counsel have negotiated a settlement at arm's-length, a strong initial presumption is created that the compromise is fair and reasonable. *See United States v. Texas Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982). The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1985) ("[T]he value of the assessment of able counsel negotiating at arm's-length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."). Thus, if experienced counsel determine that a settlement is in the class's best interests, "the attorney's

views must be accorded great weight." *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978). This settlement offer was obtained by experienced, fully-informed counsel after significant investigation, substantial informal discovery, and lengthy negotiations which included the extensive involvement of two mediators. The presumption that the settlement is fair and reasonable should attach.

### B.    Standard

The standard for reviewing the proposed settlement of a class action is whether the proposed settlement is "fair, adequate and reasonable" and whether it has been entered into without collusion between the parties. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). In applying this standard, courts must determine whether, in light of the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation." *Florida Trailer & Equipment Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

The Fifth Circuit has identified six factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives and absent class members.

*Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) (internal citations omitted); *Reed*, 703 F.2d at 172. An analysis of these factors demonstrates the propriety of entering final approval of this settlement.

### C.    Analysis of Factors

#### 1.    The proposed settlement is free from fraud and collusion

Courts should presume that settlement negotiations are free from fraud and collusion, unless affirmative evidence indicates otherwise. *Purdie*, 2003 U.S. Dist. LEXIS 22547, at *19 (rejecting claim of fraud or collusion because objector pointed to no evidence in record supporting her claim); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:41 (4th ed. 2002).  In addition, if the terms of the proposed settlement are fair, courts generally will assume the negotiations were proper. *See In Re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).

The parties engaged in extensive arm's-length negotiations.  The parties continued their discussions, both with and without the assistance of the mediators, over a period of years.  At all times, both sides zealously advocated their positions.  Numerous proposals were considered, analyzed, and rejected.  Counsel were prepared to continue (and did continue for several years) with the litigation even after settlement talks had begun because a favorable settlement had not been obtained for the class.  Only when counsel were presented with a settlement that was fair, adequate, and reasonable did they recommend it to Lewis and Brodie.  Therefore, the circumstances of the parties' negotiations leave no question that the settlement resulted from hard-fought negotiations by well-informed counsel and parties.

Counsel's knowledge of this case, together with counsel's experience in class action litigation, and ERISA class actions in particular, underscores the appropriateness of applying the presumption here.  Because there is no evidence – or even the hint – that the settlement is the product of collusion between the parties, and all of the circumstances indicate it was negotiated at arm's-length, this court should find that an analysis of this factor supports approval of the settlement.

### 2.    Complexity, expense, and likely duration of continued litigation

The complexity, expense, and likely duration of the litigation also favor approval of the settlement. *See Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978) (noting that the expense of trial can be "staggering," and carries with it the "distinct possibility" that the trial will result in no recovery").

This is undoubtedly a complex case. The reticulated nature of the statute brings a complexity to any ERISA litigation even without the intricacies added by class action allegations and the underlying facts. This action involves claims that the plan's fiduciaries breached their fiduciary duties to the class. The Complaint alleges that despite intimate knowledge of El Paso's illicit activities and the devastating impact they would have on El Paso's stock price, the plan's fiduciaries continued to encourage and permit plan investments in El Paso stock.

In addition to showing the imprudence of investing in El Paso stock, plaintiffs would also need to prove which defendants were fiduciaries and how they failed in their fiduciary duties. *See, e.g., In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (noting that additional ERISA issues such as "[f]iduciary status, the scope of fiduciary responsibility, the appropriate fiduciary response to the Plans' concentration in company stock and [the company's] business practices would be issues for proof" which, together with unresolved legal issues, would "substantially increase the ERISA cases' complexity, duration, and expense").

As one court aptly recognized when considering a proposed class action settlement, complexities abound in ERISA breach of fiduciary duty cases:

> The ERISA cases would pose additional factual and legal issues. Fiduciary status, the scope of fiduciary responsibility, the appropriate fiduciary response to the Plans' concentration in company stock and [the defendant's] business practices would be issues of proof, and numerous legal issues concerning fiduciary liability in connection with company stock in 401(k) plans remain unresolved. These

uncertainties would substantially increase the ERISA cases' complexity, duration, and expense - - and thus militate in favor of settlement approval.

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

At the time the settlement was reached, discovery in the case was stayed and defendants' third motions to dismiss and/or for summary judgment were still pending. Even assuming the stay lifted and the motions were denied, considerable effort would still be required before the case would be trial-ready, including voluminous document discovery, depositions of named defendants and other high-ranking employees and former employees of El Paso, as well as expert discovery. In view of the high stakes involved and legal issues that are not yet fully settled, an ultimate appeal to the Fifth Circuit would be a real possibility. As this court is aware, the Fifth Circuit has not been especially receptive to cases such as these in the recent past.

If the parties had not reached a settlement, the tremendous expenses associated with engaging in full merits discovery, depositions and expert discovery, not to mention summary judgment, trial preparation, trial, and inevitable additional appeals would also have been borne by the parties and could have significantly eaten into available insurance coverage. Moreover, the likely duration of continued litigation would have been significant before there could be a recovery, if any, obtained for the class.

### 3.    The stage of the proceedings and the amount of discovery completed

This factor focuses on whether the parties had sufficient information to conduct informed bargaining for a settlement that adequately reflects the merits of the case. Courts generally recognize that it is not necessary that plaintiffs complete formal discovery in order to negotiate a fair settlement. *Corrugated Container*, 643 F.2d at 211. Rather, "the overriding theme of [Fifth Circuit] caselaw is that formal discovery is not necessary as long as (1) the interests of the class are not prejudiced by the settlement negotiations and (2) there are substantial factual bases on

which to premise settlement." *Newby v. Enron*, 394 F.3d 296, 306 (5th Cir. 2004).  Further, the trial court "may legitimately presume that counsel's judgment [that it has the information necessary to evaluate a settlement] is reliable." *Corrugated Container*, 643 F.2d at 211.

Here, plaintiffs and their counsel litigated to a point where they could make an informed decision that the risks of moving forward outweighed the opportunity to obtain a larger recovery at trial and that the settlement provided a substantial recovery for the class and merited endorsement.  Prior to filing the complaint, counsel conducted an investigation that was extensive and far-ranging, including interviews with former employees of El Paso and review of publicly available documents.  The information gleaned from this extensive investigatory process enabled plaintiffs to set forth their allegations with great specificity and to identify specific conduct and breaches of fiduciary duty alleged to be unlawful.

Moreover, after filing of the complaint, counsel conducted a detailed investigation of the claims at issue, including the review of millions of pages of documents deemed relevant and informally produced by defendants.  Counsel also conducted significant legal research pertaining to the claims and defenses when opposing defendants' three motions to dismiss and/or for summary judgment.

In preparation for the mediations, counsel prepared detailed mediation briefs that summarized the merits of plaintiffs' claims and succinctly demonstrated claims of the alleged fiduciary breaches.  In addition, counsel retained consulting experts to construct a financial model to approximate the losses suffered by the plan based upon the information provided in settlement discussions regarding the volume of purchases and sales of El Paso common stock held in participants' accounts during the class period.  The consulting experts produced several

different loss calculations based upon a variety of loss scenarios to assist counsel in the settlement negotiation and the evaluation of plaintiffs' claims.

After reviewing these voluminous materials pertaining to defendants' potential liability for the underlying ERISA claims, counsel was sufficiently informed of the relevant facts to negotiate a fair and reasonable settlement of the ERISA claims.

### 4.   Probability of success on the merits

Even if plaintiffs prevailed on the motions for summary judgment or to dismiss and were permitted to begin formal discovery, nothing guaranteed their success in litigating the case on its merits.   While there are numerous decisions addressing Rule 12 and Rule 56 motions in this type of action, to date only three ERISA breach of fiduciary duty class actions have gone through trial, all with defense verdicts.   *See DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006), *affirmed,* 497 F.3d 410 (4th Cir. 2007) (Fourth Circuit affirmed the district court's ruling that defendants did not  breach ERISA mandated fiduciary duties by continuing to offer company stock as plan investment option.); *Nelson v. IPALCO Enters., Inc..* 480 F. Supp. 2d 1061 (S.D. Ind. 2007) (court determined defendant fiduciaries did not breach their fiduciary duties under ERISA by failing to remove company stock as a plan investment option); *Landgraff v. Columbia Healthcare Corp.*, No. 98-CV-0090, 2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000) (same).   Thus, the risks associated with continuing to trial were very real.   *Cf. Kirschbaum v. Reliant Energy, Inc.*, 526 F.2d 243 (5th Cir. 2008) (affirming dismissal of analogous action on summary judgment).

While counsel are confident in their ability to establish liability and distinguish this matter from cases where plaintiffs were unsuccessful, they recognize numerous additional risks posed by continued litigation.   For example, the court may deny plaintiffs' motion for class certification, defendants may prevail on summary judgment, or plaintiffs may ultimately lose at

trial or obtain a judgment below the proposed $17 million settlement. Moreover, even if plaintiffs were successful in avoiding each of these obstacles, lengthy appeals were sure to follow any judgment at the district court level.

Although plaintiffs continue to believe in the strength of their action, they recognize that the development of relevant ERISA and class action law in the Fifth Circuit make their case harder to prove. Plaintiffs likely faced substantial risks with respect to proving liability, loss causation, and damages if their case continued. Additionally, even if plaintiffs survived a motion to dismiss, defendants asserted various defenses which plaintiffs would be required to refute in order to survive post-discovery dispositive motions and win a verdict in its favor. *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) ("Regardless of the strength of case counsel might present at trial, victory in litigation is never guaranteed."). Analysis of this factor clearly weighs in favor of settlement approval.

### 5.   The range of possible recovery

To assess the reasonableness of a proposed settlement seeking monetary relief, an inquiry "should contrast settlement rewards with likely rewards if the case goes to trial." *In re Chicken, Antitrust Litig.*, 669 F.2d 228, 239 (5th Cir. 1982); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981). Moreover, a settlement "must be balanced against the expenses and delay necessary to achieve a potentially larger result after trial and appeals." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006); *see also In re Enron Sec., Derivative and ERISA Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("the settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand").

Here, the class will receive $17 million (as well as changes to the Plan) in exchange for the release of all claims against defendants. At the time the settlement was reached, the case had been pending for six years and formal discovery was stayed, despite numerous attempts by the plaintiffs to lift the stay.

Moreover, as described above, plaintiffs would have to defeat a number of significant hurdles to reach judgment.  No jury was demanded, and the court would be charged with determining damages in the event that a liability judgment was obtained in plaintiffs' favor.  In determining losses under ERISA, the relevant benchmark is what a prudent investment would have returned in lieu of the imprudent one.

Drawing on the RESTATEMENT (SECOND) OF TRUSTS, courts have described the goal for measuring losses as "restoring plan participants to the position in which they would have occupied but for the breach of trust." *Eaves v. Penn*, 587 F.2d 453, 462 (10th Cir. 1978); *see also Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) (explaining that "[o]ne appropriate remedy in cases of breach of fiduciary duty is the restoration of the trust beneficiaries to the position they would have occupied but for the breach of trust") (citing RESTATEMENT (SECOND) OF TRUSTS §205(c) (1959)).  Here, but for the imprudent investment in El Paso stock, the plan would have invested in some other investment whose performance must be considered in calculating losses.

While the settlement is "a bird in hand," if the case were litigated, defendants would vigorously challenge the existence of any damages at all.  *See, e.g., Edgar v. Avaya, Inc.*, 503 F.3d 340, 350 (3d Cir. 2007) (accepting efficient market hypothesis theory).  Plaintiffs' expert estimated that damages could be as high as $200 million, but that would mean winning most or all of the legal arguments relating to liability and the proper measure of calculating losses.  Losing on certain of these arguments, including the efficient market argument, would result in damages at or near $0.  Obviously, $17 million will not compensate the plan for all losses, but significant impediments to recovery exist, and the plan may well receive less or nothing in the absence of a settlement.

In summary, even assuming that plaintiffs could establish liability at trial, there are several arguments available to defendants to reduce or eliminate entirely the resulting damages. The settlement provides valuable and substantial recovery for the plan. Once plaintiffs' potential recovery is discounted for risk, the adequacy of the settlement is apparent. The differences and uncertainty in the proper measure of damages and the range of potential recovery, therefore, further support the settlement.

### 6.      The opinions of counsel, named plaintiffs and the class

"Counsel are the Court's main source of information about the settlement ... and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007) (internal citations omitted). "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" *Schwartz v. EL PASO Corp.*, No. 02-CV-2243, 2005 U.S. Dist. LEXIS 27077, at *72 (N.D. Tex. Nov. 8, 2005) (internal citation omitted).

Plaintiffs' counsel, Barroway Topaz Kessler Meltzer & Check, LLP[2] ("BTKMC"), is among the most experienced in the country in handling complex ERISA class action cases.[3] In addition to their extensive litigation experience, counsel has also successfully engaged in extensive, intricate, and intense settlement negotiations, including court-ordered mediations.

Counsel's extensive experience in ERISA and other complex class action litigation, in addition to their vigorous and effective pursuit of the class's interest in this case, lends further credence to the adequacy of the proposed settlement. *See* Declaration of Joseph H. Meltzer attached as exhibit 1 to the fee motion, and BTKMC firm resume attached to the Meltzer declaration as exhibit C. Counsel's ERISA department has prosecuted numerous ERISA cases, with courts rendering favorable opinions in a number of decisions denying defendants' motions to dismiss and/or summary judgment,[4] and is currently trying an ERISA class action in the Northern District of Illinois.

The Bilek Law Firm, LLP also has extensive experience in class action lawsuits, including trying two such cases in Houston – one in the Civil District Court of Harris County and the other in the Southern District of Texas, Houston Division. *See* Declaration of Thomas E. Bilek attached as exhibit 2 to the fee motion, and The Bilek Law Firm, LLP resume attached as exhibit A to the Bilek declaration.

---

[2] The firm was previously named Schiffrin Barroway Topaz & Kessler, LLP.

[3] BTKMC has been named lead or co-lead counsel in numerous breach of fiduciary class actions across the nation, including: *Nowak v. Ford Motor Co.*, No. 06-CV-11718 (E.D. Mich.); *Brieger v. Tellabs, Inc.*, No. 06-CV-1882 (N.D. Ill.); *In re Global Crossing ERISA Litig.*, No. 02-CV-7453 (S.D.N.Y.); *In re BellSouth Corp. ERISA Litig.*, No. 02-CV-2440 (N.D. Ga.); *In re AOL ERISA Litig.*, No. 02-CV-8853 (S.D.N.Y.); *In re Bristol-Myers ERISA Litig.*, No. 02-CV-10129 (S.D.N.Y.); *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-CV-8324 (N.D. Ill.); *Gee v. UnumProvident Corp.*, No. 03-CV-1552 (E.D. Tenn.); and *In re Polaroid ERISA Litig.*, No. 03-CV-8335 (S.D.N.Y.).

[4] *See, e.g., Brieger v. Tellabs, Inc.*, 473 F. Supp.2d 878 (N.D. Ill. 2007); *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-CV-4743, 2005 WL 1662131 (N.D. Cal. July 14, 2005); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461 (S.D.N.Y. 2005); *In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*, MDL No. 1500, 2005 U.S. Dist. LEXIS 3715 (S.D.N.Y. Mar. 9, 2005). BTKMC has also prevailed at the Circuit level in litigating ERISA. *See, e.g., Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005).

Likewise, defendants' counsel are also experienced and informed and recommend this settlement. Here, El Paso is represented by the noted Houston firm Susman Godfrey LLP. The experience of the counsel who negotiated and put forth this settlement for final approval is an additional factor favoring its approval as fair, reasonable, and adequate.

Given that (1) this settlement provides a substantial recovery for the class, (2) there are significant risks in litigating this case further, including the pending motions to dismiss and/or for summary judgment, (3) the case is still stayed after almost seven years, and (4) the "litigation climate" for ERISA cases like this within the Fifth Circuit is not robust, it is counsel's opinion that it is probable that a better result would not be obtained.

It should also be considered that the reaction of the class to the settlement has been overwhelmingly supportive. Following the dissemination of approximately 19,232 copies of the notice to potential class members, and as of the April 6, 2009 deadline for filing objections, only two non-specific objections to the "lawsuit" have been received. This absence of dissent strongly supports final approval of the settlement.

Therefore, Lewis, Brodie, and their counsel respectfully submit that the analyses set forth above and all of the circumstances of the settlement demonstrate that the settlement is fair, reasonable, and adequate.

## VII.   Class Certification

The court certified the settlement class under FED. R. CIV. P. 23(a) and (b)(1) in the February 3, 2009 preliminary approval order.

## VIII.   Plan of Allocation

The standard for approval of a plan of allocation is the same as the standard for approving the settlement: the plan must be "fair, adequate and reasonable" and must not be "the product of collusion between the parties." *In re Chicken, Antitrust Litig.*, 669 F.2d at 238. This analysis is

to be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Id.* In addition, an allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *Taft v. Ackermans*, No. 02 –CV-7951, 2007 U.S. Dist. LEXIS 9144, at *27 (S.D.N.Y. Jan. 31, 2007).

The plan of allocation, attached as exhibit A, provides that each class member's share of the settlement will be calculated by first determining each class member's net loss,[5] then aggregating all net losses suffered by class members to yield the total loss over the class period, then calculating each class member's percentage of that total loss. That percentage will be applied to the settlement proceeds (net of fees and expenses) to each class member's share of those proceeds on a preliminary basis. All participants whose preliminary share is less than or equal to ten dollars ($10.00) will be deemed to have a final share equal to ten dollars. The claims administrator will then recalculate the net loss percentage of those class members whose preliminary share was greater than $10.00, to arrive at each such class member's final share.

The plan of allocation also makes arrangements for participants who no longer maintain accounts in the plan to receive their distribution in accounts newly created for this purpose, so that all class members may take advantage of the applicable tax laws. The plan of allocation is virtually identical to plans of allocation used, with court approval, in numerous cases involving recoveries on behalf of ERISA plans. Significantly, unlike a securities case, all records of relevant transactions are maintained by the plan, and the amounts to be distributed can be determined quickly. Distribution to class members typically occurs shortly after all orders concerning approval of a settlement and for the award of fees and expenses become final; retirees do not have to wait long to receive the settlement proceeds.

---

[5] For each class member, his or her net loss will be equal to: (a) the dollar value, if any, of his or her account balance in the El Paso stock fund on the first day of the class period; plus (b) the dollar value, if any, of all acquisitions of El Paso stock during the class period, as of the time of purchase(s); minus (c) the dollar value, if any, of all dispositions of El Paso stock during the class period, as of the time of the sale(s); minus (d) the dollar value, if any, of El Paso stock remaining on the last day of the class period.

The fairness and reasonableness of the allocation formula is confirmed by the lack of meritorious class member objections to it. In sum, counsel believe that the method of allocation is fair, reasonable, and adequate and supports final approval of the settlement and plan of allocation.

## IX.    Conclusion

For all of these reasons, plaintiffs request final approval of the settlement and plan of allocation.

Dated:  April 20, 2009.

Respectfully submitted,

Thomas E. Bilek
State Bar No. 02313525 / Federal Bar No. 9338
THE BILEK LAW FIRM, L.L.P.
808 Travis, Suite 802
Houston, TX  77002
(713) 227-7720
FAX (713) 227-9404

ATTORNEY-IN-CHARGE FOR PLAINTIFFS

Of Counsel:

Kelly Cox Bilek
State Bar No. 00786286
THE BILEK LAW FIRM, L.L.P.
808 Travis, Suite 802
Houston, TX  77002
Telephone:  (713) 227-7720
Facsimile:  (713) 227-9404

Joseph H. Meltzer
Edward W. Ciolko
Katherine B. Bornstein
BARROWAY TOPAZ KESSLER
   MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile:  (610) 667-7056

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was filed via the Live District CM/ECF System on April 20, 2009, which caused an electronic copy of same to be served automatically upon counsel of record.

Thomas E. Bilek

# EXHIBIT  A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| WILLIAM H. LEWIS, III, and KEITH BRODIE, on Behalf of Themselves and All Others Similarly Situated | § § § § | CIVIL ACTION NO. H-02-4860 |
| Plaintiffs, | § § | |
| v. | § § | |
| EL PASO CORPORATION, *et al.*, | § § | |
| Defendants. | § § | |

---

**PLAN OF ALLOCATION**

---

1.     **Definitions**

       A.     Except as indicated in this *Plan of Allocation*, the capitalized terms used herein shall have the meanings ascribed to them in the Class Action Settlement Agreement.

       B.     "*Claims Administrator*" shall mean a third-party vendor, designated by Lead Plaintiff, which shall administer the Settlement.

       C.     "*Net Settlement Fund Proceeds*" means the *Settlement Fund*, less: (1) the *Settlement Administrative Costs*; (2) the costs of the *Class Notice* that the *Court* approves for payment from the *Settlement Fund* pursuant to Section 8.1 of the Settlement Agreement; (3) any Named Plaintiff Compensation that the *Court* approves for payment from the *Settlement Fund* pursuant to Section 8.3 of the *Settlement Agreement*; (4) Court approved attorneys' fees and expenses; and (5) such other deductions and payments from the *Settlement Fund* as the *Court* may allow.

D.     The *"Plan"* means the El Paso Energy Corporation Retirement Savings Plan (as amended and restated effective January 1, 2001) and all successor and amended plans, as well as predecessor plans qualifying under Section 401(a) of the Internal Revenue Code and any trust agreements created under the foregoing plans.

E.     *"Settlement Administrative Costs"* means the taxes, fees and expenses that the *Court* approves for payment from, or are otherwise permitted to be paid from, the *Settlement Fund* pursuant to Section 7.1.4 of the Settlement Agreement.

F.     *"Settlement Class Member"* means a member of the *Class*.

G.     *"Class Period"* means the period from November 9, 2000 through March 11, 2004, as defined in the Settlement Agreement.

**2.     Notice**

A.     Pursuant to and in full compliance with Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finds and concludes that due and adequate notice was directed to all Persons who are Settlement Class Members who could be identified with reasonable effort, advising them of the *Plan of Allocation* and of their right to object thereto, and that a full and fair opportunity was accorded to all of the *Class Members* to be heard with respect to the *Plan of Allocation*.

**3.     Calculation of allocation**

A.     For each *Class Member*, the *Claims Administrator* shall determine the approximate net loss (*"Net Loss"*) as follows:   $Net\ Loss = A + B - C - D$, where, for each *Class Member's* account:

1.     A = the dollar value, if any, of the balance in *El Paso Stock* on the first day of the *Class Period*;

2.      B = the dollar value, if any, of all acquisitions of *El Paso Stock* during the *Class Period* as of the time of purchase(s);

3.      C = the dollar value, if any, of all dispositions of *El Paso Stock* during the *Class Period* as of the time of the sale(s); and

4.      D = the dollar value, if any, of *El Paso Stock* remaining on the last day of the *Class Period*.

B.      The *Net Losses* of the *Class Members* as calculated in Section III.A above will be totaled to yield the loss of the *Plan* as a whole over the *Class Period* (the *"Plan's Loss"*).

C.      The *Claims Administrator* shall calculate for each *Class Member* his or her *"Preliminary Fractional Share"* of *the Plan's Loss* by dividing each *Settlement Class Member's Net Loss* by the *Plan's Loss*.

D.      The *Claims Administrator* shall then calculate for each *Class Member* his or her *"Preliminary Dollar Recovery"* of the *Net Settlement Fund Proceeds* by multiplying the *Class Member's Preliminary Fractional Share* by the *Net Settlement Fund Proceeds*.

E.      The *Claims Administrator* shall identify all *Class Members* whose *Preliminary Dollar Recovery* is greater than zero but less than a minimum amount of ten dollars ($10.00) (the *"Minimum Amount"*).   All such *Class Members* shall receive an allocation from the *Net Settlement Fund Proceeds* of the *Minimum Amount*.

F.      The *Claims Administrator* shall then, after subtracting out the amounts allocated to *Class Members* who receive the *Minimum Amount*, recalculate the *Preliminary Fractional Shares* and the *Preliminary Dollar Recoveries* so as to arrive at the *"Final Fractional Share"* and the *"Final Dollar Recovery"* for each *Class Member*.   The sum of the *Final Dollar Recoveries* must equal the *Net Settlement Fund Proceeds*.

3

**4.**     **Distribution of the allocated amounts**

A.     As soon as practicable after the calculations pursuant to Section III above, *Lead Counsel* shall direct the Financial Institution to deposit the *Net Settlement Fund* Proceeds into the Plan.

B.     *Class Members* With Accounts Under the *Plan*.  As promptly as possible after deposit of the *Net Settlement Fund Proceeds* into the *Plan*, the *Claims Administrator* shall deposit into each *Class Member's* account under the *Plan* his or her *Final Dollar Recovery* as calculated above.   The deposited amount shall be allocated among the *Class Member's* investment options in accordance with the existing investment elections then in effect and treated thereafter for all purposes under the *Plan* as assets of the *Plan* properly credited to that *Class Member's* account.

C.     *Class Members* Without Accounts Under the *Plan*.   With respect to *Class Members* who withdrew their accounts under the *Plan* after the beginning of the *Class Period* but prior to the entry of the instant Order, the *Claims Administrator* will establish an account for each such *Class Member*, and each such *Class Member* will be notified of such account along with further instructions from the *Plan* trustee.

D.     If any *Class Member* with a *Final Individual Dollar Recovery* cannot be located despite reasonable efforts, such *Class Member's Final Individual Dollar Recovery* shall be administered in accordance with the procedures of the *Plan* regarding unlocatable participants. If any *Class Member with a Final Individual Dollar Recovery* is deceased, such *Class Member's Final Individual Dollar Recovery* shall be administered in accordance with the procedures of the *Plan* regarding deceased participants.

4

**5.     Qualifications and continuing jurisdiction**

A.     In light of the manner in which the data is kept and the ease with which it can be manipulated, it may be appropriate to simplify some of the features of these calculations.  Such simplifications are acceptable as long as the two basic features of the distribution of the *Net Settlement Fund Proceeds* are preserved:  (1) that each *Class Member* receives a proportionate share of the *Net Settlement Fund Proceeds* based approximately on the decline in the value of *Company Stock* held in the *Class Members'* account over the *Class Period* in comparison with the decline in value of *Company Stock* held by all other *Class Members*; and (2) that the distribution take place through the *Plan* so as to realize the tax advantage of investment in the *Plan*.  Any such changes will be presented to the *Court* for approval pursuant to Section V.B below.

B.     The *Court* will retain jurisdiction over the *Plan of Allocation* to the extent necessary to ensure that it is fully and fairly implemented.